UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNULFO FLORES, JR., personal
representative of the estate of
YOLANDA FLORES,

                Plaintiff,                       Case No. 07-11288

v.                                       Honorable David M. Lawson

RYAN TOADVINE, DAVID BORTON,
PAUL DYE, LEO SWINEHART,
JAMES WHITEMAN, and ADAM
ONDROVICK,

                Defendants.

_____/

## ORDER ADJUDICATING MOTIONS RELATING TO SETTLEMENT FUND DISTRIBUTION

Before the Court are several motions dealing with claims by competing parties to a $245,000 fund generated by the settlement of this personal injury action involving the plaintiff's decedent, Yolanda Flores.  On August 11, 2009, the Court approved the settlement but did not approve the parties' proposal to distribute the settlement funds.  The Court rejected a request from the later-appearing attorneys for the plaintiff, Cynthia Heenan and Hugh Davis of the law firm Constitutional Litigation Associates (CLA), for a distribution of attorney's fees that, when combined with the fee request of other attorneys for the plaintiff, would exceed one-third of the net recovery.  Since then, CLA served a notice of lien, a motion to stay distribution of the settlement fund, a motion to withdraw as attorneys, and a motion to intervene to protect its interest in the fee.  The plaintiff, through attorney Jason Jelalian, has filed a motion for reconsideration of the order directing notice under the Michigan wrongful death statute and a motion for distribution of settlement funds.  Trebax Land Development, L.L.C. (Trebax) filed a motion to intervene and for a temporary restraining

order, claiming an interest in the portion of the attorney's fee due to Tank & Jelalian, P.C. as a result of a state court judgment it has against Mr. Tank. The Court noticed all motions for hearing yesterday and heard oral argument.

It appears that the law firm of Tank & Jelalian, the original and continuing law firm representing the plaintiff, has dissolved, and Messers. Tank and Jelalian are no longer law partners. The settlement fund resides in Mr. Jelalian's trust account (the Law Office of Jason M. Jelalian, P.C.), where it shall remain subject to the provisions of this order. It also appears that the plaintiff, personal representative Arnulfo Flores, wishes to discharge CLA as attorneys for the plaintiff.

The parties have reached agreement on some issues. Counsel for Trebax will file a stipulation with the attorneys for the plaintiff and Mr. Tank that will permit Mr. Jelalian to pay over to Trebax so much of Mr. Tank's share of the attorney's fee as to satisfy Trebax's judgment. Tank & Jelalian and CLA have agreed that whatever attorney's fee is approved will be divided one-third to CLA and two-thirds to Tank & Jelalian. The attorneys have agreed to accept the amount of $35,000 as reimbursement for litigation expenses, which appears to be somewhat less than actual expenses, according to the representations of the attorneys, which the Court accepts. That amount may be distributed by Mr. Jelalian to the lawyers who incurred those expenses as follows: $32,000 to Tank and Jelalian, P.C., and $3,000 to CLA. The Court now must approve the distribution of the remaining $210,000.

A. Attorney's Fees

The plaintiff initially hired Tank & Jelalian, P.C. to represent the estate to recover for the injuries and death of Yolanda Flores when she was an inmate at the Lenawee County jail. Craig Tank and Jason Jelalian filed a complaint based on 42 U.S.C. § 1983 on March 26, 2007. According

-2-

to the motion for distribution of the settlement proceeds filed on August 13, 2009 [dkt #154], the plaintiff entered into a contingent fee agreement with Tank & Jelalian, P.C. calling for an attorney's fee payment of one-third of the net recovery (i.e., after payment of litigation expenses).  CLA alleges in the motion that it was brought into the case by the Tank law firm in December 2008 when it looked like the case would go to trial, because Tank & Jelalian were not civil rights specialists and were not familiar with "the intricacies of 42 U.S.C. § 1988."  Motion [dkt #154] at 2.  However, the Court's docket shows that Cynthia Heenan and Hugh Davis filed their appearances for Constitutional Litigation Associates as co-counsel for the plaintiffs on October 27, 2008.  CLA alleges that Mr. Flores entered into "[t]heir standard civil rights fee agreement . . . which specifies that the attorneys' fees shall either be one-third or the actual value of the time expended, whichever is *greater*."  Motion [dkt # 154] at 3 (emphasis added).  CLA does not state when Mr. Flores – who appears to struggle with the English language – entered into this agreement, but the written agreement with CLA attached as an exhibit to the motion is dated August 10, 2009, which post-dated the negotiation of the settlement with the defendants. *See* Motion [dkt # 154] Ex. 1.

CLA alleges that it is entitled to an attorney's fee in the amount of $50,000, with Tank & Jelalian, P.C. receiving a fee of $80,000, leaving the client with $80,000 to distribute among Yolanda Flores's heirs.  Since the net recovery after expenses is $210,000, it is plain that Tank & Jelalian's share of the suggested fee alone would exceed the agreed one-third.  When CLA's suggested portion is added, the client would receive 38% of the net recovery and the lawyers would receive 62%, a division that is close to the inverse of the original fee agreement.  CLA justifies the lopsided distribution with the argument that Mr. Davis negotiated the attorney's fee amount with

-3-

the defendants distinct from the rest of the damages. However, a settlement in that form was neither presented to nor approved by the Court, and there is no documentation that supports that claim.

It is certainly well settled that a prevailing party in a civil rights case brought under 42 U.S.C. § 1983 may be awarded a reasonable attorney's fee by the court. *See* 42 U.S.C. § 1988(b) (stating that under the Civil Rights Act, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs"). However, the plaintiff was not a prevailing party in this case; the matter was settled by an agreed dismissal and not by consent judgment. *See Sierra Club v. Hamilton County Bd. of County Comm'rs*, 504 F.3d 634, 653 n.8 (6th Cir. 2007) (noting that "[t]he [Supreme] Court explicitly cautioned that private settlements could not confer prevailing party status because '[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change'") (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001)). Section 1988, therefore, has no bearing on CLA's fee demand.

Even if section 1988 did provide some authority for CLA to claim a fee in excess of the plaintiff's original one-third agreement with Tank & Jelalian, the Court still would have to determine that the fee is reasonable, a decision committed to the court's discretion. *See Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 634 (6th Cir. 2009). The burden of proving the reasonableness of the requested attorney's fee "is on the fee applicant." *Blum v. Stenson*, 465 U.S. 886, 898 (1984). The Supreme Court has stated that in determining a "reasonable" fee under section 1988, the court must first determine the "lodestar" amount (the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate) and then reduce or

-4-

augment that amount by considering other case-specific factors. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *see also Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The party seeking to recover fees bears the initial burden of substantiating the hours worked and the rate claimed. *Hensley*, 461 U.S. at 433; *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). The number of hours reasonably expended on a matter includes time spent drafting and revising pleadings, meeting with clients, and preparing the case for trial. *Hensley*, 461 U.S. at 433. The court may reduce the hours claimed where the documentation is inadequate or the time was not "reasonably expended." *Mehney-Egan v. Mendoza*, 130 F. Supp. 2d 884, 886 (E.D. Mich. 2001) ("Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. 'A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.' Mich. R. Prof'l Conduct (MRPC) 1.5." (internal citation omitted)).

Despite having the opportunity to do so, CLA has failed to provide any evidence of the time expended or the reasonableness of the hourly rates claimed by its attorneys and other personnel, except the allegation that a discovery dispute "required intense and substantial work." Motion [dkt # 154] at 3. So even if section 1988 applied to CLA's fee claim, CLA could not prevail based on the information (or lack of it) it chose to submit.

CLA's arguments have proved deficient at every turn: the allegations in its motion either lack documentary support or are contradicted by its own filings; the written fee agreement on which it relies appears to have been signed after the fact; the statute on which it relies does not apply to the present situation; and it has produced no evidence of the time it spent on the case or the

-5-

reasonableness of its claimed hourly rates.  There is little to commend CLA's fee request to the Court for approval.

It still remains for the Court to determine a proper attorney's fee.  Trial courts have broad powers to supervise the collection of attorney's fees under contingency fee contracts.  *Krause v. Rhodes*, 640 F.2d 214, 218 (6th Cir. 1981).  The Court assesses several factors identified under state law, including the terms of a contingent fee agreement.  *See Green v. Nevers*, 1993 WL 1620511, at *15-16 (E.D. Mich. Apr. 13, 1993), *aff'd* 196 F.3d 627 (1999); *see also Barrett v. West Chester Univ. of Pa. of State Sys. of Higher Edu.*, 636 F. Supp. 2d 439, 445 (E.D. Pa. 2009) (citing with approval the practice laid out in *Green v. Nevers*).  In this case, it appears that the plaintiff is content to pay an attorney's fee consistent with his original agreement with Tank & Jelalian, calculated on the basis of one-third of the net recovery.  *See* Mot. for Disbursement of Funds [dkt #162], Ex. 3. Tank & Jelalian wisely have concurred in that distribution.  Moreover, the Michigan Rules of Professional Conduct limit attorney's fees to one-third of the recovery in personal injury and wrongful death actions.  *See* Mich. R. Prof'l Conduct 1.5.  This Rule incorporates Michigan Court Rule 8.121, which states:

> (A) Allowable Contingent Fee Agreements. In any claim or action for personal injury or wrongful death based upon the alleged conduct of another, in which an attorney enters into an agreement, expressed or implied, whereby the attorney's compensation is dependent or contingent in whole or in part upon successful prosecution or settlement or upon the amount of recovery, the receipt, retention, or sharing by such attorney, pursuant to agreement or otherwise, of compensation which is equal to or less than the fee stated in subrule (B) is deemed to be fair and reasonable. The receipt, retention, or sharing of compensation which is in excess of such a fee shall be deemed to be the charging of a "clearly excessive fee" in violation of MRPC 1.5(a).
>
> (B) Maximum Fee. The maximum allowable fee for the claims and actions referred to in subrule (A) is one-third of the amount recovered.

-6-

Mich. Ct. R. 8.121.  After considering the applicable factors, assessing from the docket entries the amount of work performed by the plaintiff's attorneys as a group, and considering the first contingent fee agreement, the Court finds that an attorney's fee in the amount of one-third of the net recovery is reasonable and appropriate in this case.  The Court, therefore, approves an attorney's fee in the amount of $70,000 to be divided among plaintiff's counsel.

Based on the agreement between CLA and Tank & Jelalian placed on the record yesterday, Tank & Jelalian's share of the attorney's fee is $46,667; CLA's share is $23,333.  CLA, however, claims it is entitled to a total of $50,000 in fees from the estate's share of the settlement proceeds. It has indicated its intention to appeal this Court's adverse determination, and the parties have agreed to sequester the difference ($26,667) until the appeal is concluded.  The Court will so order.  The Court also will grant CLA's motion to intervene for the purpose of pursuing its claim to attorney's fees on appeal.

### B.  Distribution of Net Settlement Proceeds

This lawsuit originally claimed damages for the conscious pain and suffering Yolanda Flores suffered during her lifetime at the defendants' hands, plus damages suffered by her heirs as a result of her wrongful death.  Consequently, the action was both a survivor's action and a wrongful death action.  *See Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 575 n.2 (1974) (explaining the difference between survivor's and wrongful death actions: "Wrongful-death statutes are to be distinguished from survival statutes.  The latter have been separately enacted to abrogate the common-law rule that an action for tort abated at the death of either the injured person or the tortfeasor.  Survival statutes permit the deceased's estate to prosecute any claims for personal injury the deceased would have had, but for his death.  They do not permit recovery for harms suffered by the deceased's family as

a result of his death.").  Michigan's wrongful death statute, Mich. Comp. Laws § 600.2922, which, *inter alia*, provides guidance in the settlement of death claims, deals with both survivor's and wrongful death actions.  *See In re Thornton*, 192 Mich. App. 709, 481 N.W.2d 828 (1992).

The wrongful death aspect was dismissed from this case when the Court granted partial summary judgment following the plaintiff's concession that he could not prove a causal connection between the defendants' wrongful acts and Yolanda Flores's death.  The parties agree that the settlement was paid in consideration for the aspect of the lawsuit that remained: Ms. Flores's conscious pain and suffering.

The significance of this finding is its effect on the distribution of the settlement proceeds. According to the Michigan statute, wrongful death proceeds may be distributed directly to the deceased's heirs.  Mich. Comp. Laws § 600.2922(6)(d) & (3)(a)-(c) (authorizing distribution to [t]he deceased's spouse, children, descendants, parents, grandparents, brothers and sisters," and in some circumstances to "those persons to whom the estate of the deceased would pass under the laws of intestate succession"; "[t]he children of the deceased's spouse"; and "[t]hose persons who are devisees under the will of the deceased"); *see also McTaggart v. Lindsey*, 202 Mich. App. 612, 616 (1993) (citing *In re Claim of Carr*, 189 Mich. App. 234, 238, 239; 471 N.W.2d 637 (1991)). However, damages must be paid "to the estate of the deceased for compensation for conscious pain and suffering."  Mich. Comp. Laws § 600.2922(6)(d); *Thornton*, 192 Mich. App. at 715, 481 N.W.2d at 831 ("[W]e conclude that the lower courts correctly decided the issue concerning the distribution of the damages for conscious pain and suffering.  By statute, these damages are payable to the estate.  Thereafter, they are to be treated as any other asset of the estate: distributed according

to the will if the decedent died testate and according to the Revised Probate Code if the decedent died intestate.").

The entire amount of the settlement represents payment for the deceased's conscious pain and suffering. The parties have stated that Yolanda Flores died without a will. Consequently, the settlement proceeds, less expenses and attorney's fees, must be paid over to the personal representative of her estate to be distributed according to the orders of the Lenawee County Probate Court, where probate of Yolanda Flores's estate presently is pending.

C.  Conclusion

The settlement funds are held presently in Mr. Jelalian's trust account. The parties have agreed on the distribution of most of the funds. The amount that is contested may remain impounded until an appeal has concluded.

Accordingly, it is **ORDERED** that the plaintiff's Motion for Reconsideration [dkt # 157] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Constitutional Litigation Associates' Motion to Stay Distribution [dkt #159] is **DENIED as moot**.

It is further **ORDERED** that Constitutional Litigation Associates' Motion to Withdraw as Attorney for the plaintiff [dkt #160] is **GRANTED**.

It is further **ORDERED** that Constitutional Litigation Associates' Motion to Intervene [dkt #161] is **GRANTED**.

It is further **ORDERED** that the plaintiff's Motion for Disbursement of Funds [dkt #162] is **GRANTED IN PART AND DENIED IN PART**.

-9-

It is further **ORDERED** that Trebax Land Development's Motion to Intervene [dkt #163] is **DENIED as moot**.

It is further **ORDERED** that Jason Jelalian may distribute from the trust account of the Law Office of Jason M. Jelalian, P.C. the following sums:

> $32,000 to Tank and Jelalian, P.C. for reimbursement of litigation costs;
> $3,000 to Constitutional Litigation Associates for reimbursement of litigation costs;
> $46,667 to Tank & Jelalian, P.C. for attorney's fees;
> $23,333 to Constitutional Litigation Associates for attorney's fees; and
> $113,333 to Arnulfo Flores, the personal representative of the estate of Yolanda Flores, deceased, to be distributed according to the orders of the Lenawee County Probate Court.

It is further **ORDERED** that Jason Jelalian may distribute to Trebax Land Development, L.L.C. so much of Craig Tank's share of the attorney's fee paid to Tank & Jelalian, P.C. pursuant to the stipulation between Trebax, Jelanian, and Tank.

It is further **ORDERED** that Jason Jelalian shall retain the sum of $26,667 segregated in a secure account according to the Rules of the State Bar of Michigan to be held for the benefit of the plaintiff, which shall be distributed upon further order of this Court or the United States Court of Appeals for the Sixth Circuit.

It is further **ORDERED** that Constitutional Litigation Associates' lien and Notice of Lien are **EXTINGUISHED**.

It is further **ORDERED** that Constitutional Litigation Associates must file its notice of appeal from this order **on or before November 13, 2009**. If no notice of appeal is filed by that date, Mr. Jelalian shall distribute the impounded funds to the plaintiff to be further distributed according to the orders of the Lenawee County Probate Court.

> s/David M. Lawson
> DAVID M. LAWSON

-10-

United States District Judge

Dated:   October 30, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 30, 2009.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO